OPINION
{¶ 1} Defendant-appellant Frank Nash appeals his conviction and sentence in the Stark County Court of Common Pleas on one count of rape and one count of kidnapping. Appellant also appeals his classification as a sexual predator.
 {¶ 2} Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND THE CASE {¶ 3} The victim in this case, Sherry B., age fifteen (15), testified that on June 7, 2001, at approximately 8:00 p.m., she walked from her house on Troy Avenue over to the duplex where her friends Jeremy and Charlie Halter lived on Shorb Avenue. (T. at 156). When she arrived at the Halter residence, there were three young males on the porch whom she recognized but did not know by name. She knocked on the Halter's door which was answered by Jeremy Halter who told her that he could not "hang out" with her because he was in the process of moving. When she turned to leave, one of the men on the porch put his arm around her and turned her toward the door to the other half of the duplex. At that time, another man came down the steps from the upstairs half of the duplex and opened the door. The two men then began tugging and pulling her and eventually took her upstairs where they initially sat her on the couch in the living room. She repeatedly told them that she "wanted to go home and wanted to leave." The men, now three in number, then took her through the kitchen and into a bathroom where they stripped her of her clothes, knocked her to the floor, causing her to hit her head on the bathtub, and locked the bathroom door. The men then turned her over onto her stomach and began to rape her. (T. at 161-162). The men took turns penetrating her both vaginally and anally with their penises and their fingers. At one point, the doorbell rang and another man entered the bathroom and he too raped her. (T. at 163-164, 176). She testified that the men kept turning her from her stomach to her back. After the fourth man left, the other three men eventually took her into a bedroom where they continued to rape her. At some point, they eventually returned her clothes to her. She was also struck and knocked to the floor. When she was allowed to leave, she was told "not to say nothing because it'll get worse." (T. at 167).
 {¶ 4} She testified that she ran home crying stopping to vomit along the way. Upon arriving at home, she immediately took a hot shower. (T. at 167). Her father eventually made her get out of the shower and tell him what was wrong. (T. at 168).
 {¶ 5} Upon being told of the rapes by his daughter, Mr. Brinkerhoff drove her back to the duplex where he confronted the men, who were sitting on the porch. The men denied having done anything to his daughter. One of the men lifted his shirt to show that he had a gun tucked in his pants. (T. at 168-169). The Brinkerhoffs then called the police and reported the rapes. The victim was taken to the hospital where she was examined and a sexual assault kit was administered. Her clothing was also taken as evidence. DNA samples were taken from the sexual assault kit and the victim's clothing. (T. at 176, 248).
 {¶ 6} In June, 2003, oral swabbing for DNA evidence was performed on Appellant. The analysis of the DNA revealed that a semen stain on the interior of the victim's jersey and a semen stain on the victim's bandana matched the DNA of appellant. (T. at 255-256). Appellant's DNA was also consistent with the mixtures of DNA found from the semen in the vaginal swabs and another semen stain on the victim's bandana. (T. at 256).
 {¶ 7} On July 11, 2003, the Stark County Grand Jury returned an indictment charging appellant with one count of rape, a felony of the first degree, pursuant to R.C. § 2907.02(A)(2) and one count of kidnapping, a felony of the first degree, pursuant to R.C. § 2905.01(A)(4). The indictment also included a sexually violent predator specification under R.C. § 2941.148.
 {¶ 8} On October 15, 2003, Appellant waived his right to a jury trial on the sexually violent predator specification. The remaining counts of rape and kidnapping proceeded to a jury trial. At trial, the State presented the following witnesses: the victim; Douglas Zartman, the responding Canton City patrolman; Jeffrey Ramser, a Canton City Police Officer with the Criminal Investigative Unit, ID Bureau; Elizabeth Morgan, the emergency room nurse; Michele Foster of the Stark County Crime Laboratory; and Michael Pregibon, the Ohio State Trooper who collected the DNA samples. Appellant testified for the defense.
 {¶ 9} After deliberations, the jury found appellant guilty as charged of the offenses of rape and kidnapping. The trial court deferred sentencing and ordered a pre-sentence investigation.
 {¶ 10} On January 5, 2004, the violent sexual predator specification was tried to the court. Appellant was found not guilty of the specification.
 {¶ 11} The trial court sentenced appellant to a nine (9) year prison term on the count of Rape and a nine (9) year prison term on the kidnapping count, with the sentences ordered to run concurrently.
 {¶ 12} The trial court also classified Appellant as a sexual predator after hearing that Appellant had previously been convicted of gross sexual imposition of a thirteen year old.
 {¶ 13} Appellant appeals his conviction and sexual predator classification, assigning the following as error:
 ASSIGNMENTS OF ERROR {¶ 14} "I. Appellant's convictions for rape and kidnapping are based on insufficient evidence.
 {¶ 15} "II. Appellant's convictions for rape and kidnapping are against the manifest weight of the evidence.
 {¶ 16} "III. The trial court's determination that appellant is a sexual predator is against the manifest weight and sufficiency of the evidence."
 I., II. {¶ 17} In his first and second assignments of error, Appellant maintains his convictions for rape and kidnapping are against the sufficiency and manifest weight of the evidence. We disagree.
 {¶ 18} In State v. Jenks (1981), 61 Ohio St.3d 259, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held: An appellate courts function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id. at paragraph two of the syllabus.
 {¶ 19} Appellant was charged with one count of rape, a violation of R.C. 2907.02(A)(2), and one count of kidnapping, a violation of R.C.2905.01(A)(4).
 {¶ 20} R.C. § 2907.02(A)(2) states:
 {¶ 21} "(A)(2) No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."
 {¶ 22} Pursuant to R.C. § 2907.02, "sexual conduct" is defined as:
 {¶ 23} "(A) "Sexual conduct" means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.
 {¶ 24} Appellant was also charged with kidnapping. R.C. § 2905.01(A)(4) defines kidnapping:
 {¶ 25} "(A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:
 {¶ 26} "* * *
 {¶ 27} "(4) To engage in sexual activity, as defined in section 2907.01
of the Revised Code, with the victim against the victim's will;
 {¶ 28} Pursuant to R.C. § 2907.02, sexual activity "means sexual conduct or sexual contact, or both."
 {¶ 29} "Sexual conduct" is defined above.
 {¶ 30} "Sexual contact" means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person.
 {¶ 31} The indictment on the kidnapping count charged appellant with the crime of kidnapping and/or aiding or abetting others in the offense. The jury therefore could find appellant guilty if it found that he aided or assisted others in the crime of kidnapping.
 {¶ 32} When applying the aforementioned standard of review to the case sub judice, based upon the facts noted supra, we find, as a matter of law, appellant's conviction was based upon sufficient evidence.
 {¶ 33} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed.
 {¶ 34} The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment. State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52, citing State v. Martin (1983), 20 Ohio App.3d 172. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1.
 {¶ 35} At trial, the victim testified that she was forced through the doorway, up the stairs, into the living room and ultimately in to the bathroom where her clothes were removed against her will and she was repeatedly forced to engage in sexual conduct against her will, with numerous men. She testified that the bathroom door was locked and she was not permitted to leave.
 {¶ 36} Appellant admitted to engaging in oral intercourse with the victim but claimed that same was consensual. (T. at 271). His testimony was that the victim agreed to engage in sexual activity with all four of the men present on that day. Id. Appellant also admitted that he was one of the three men located on the porch when the victim arrived that day. (T. at 270).
 {¶ 37} In the case sub judice, the jury was free to accept or reject any or all of the witnesses' testimony and assess the witnesses' credibility. Based upon the facts noted supra, we find there was sufficient, competent evidence to support appellant's conviction, and the same was not against the manifest weight of the evidence
 {¶ 38} Upon review, the evidence was sufficient to sustain appellant's convictions and the jury did not lose its way and create a manifest miscarriage of justice.
 {¶ 39} Appellant's first and second assignments of error are overruled.
 III. {¶ 40} In his third assignment of error, Appellant maintains that his sexual predator classification is against the manifest weight and sufficiency of the evidence. We disagree.
 {¶ 41} In State v. Cook (1998), 83 Ohio St.3d 404, 700 N.E.2d 570, the Ohio Supreme Court determined that R.C. Chapter 2950 is remedial in nature and not punitive. As such, we will review appellant's Assignment of Error under the standard of review contained in C.E. Morris Co. v.Foley Construction (1978), 54 Ohio St.2d 279, 376 N.E.2d 578. Under this standard, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. Id. at syllabus.
 {¶ 42} R.C. 2950.01(E) defines "sexual predator" as "a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." R.C. 2950.09(B)(3) sets forth the relevant factors a trial court is to consider in making its determination:
 {¶ 43} "(B)(3) In making a determination under divisions (B)(1) and (4) of this section as to whether an offender or delinquent child is a sexual predator, the judge shall consider all relevant factors, including, but not limited to, all of the following:
 {¶ 44} "(a) The offender's or delinquent child's age;
 {¶ 45} "(b) The offender's or delinquent child's prior criminal or delinquency record regarding all offenses, including, but not limited to, all sexual offenses;
 {¶ 46} "(c) The age of the victim of the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made;
 {¶ 47} "(d) Whether the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made involved multiple victims;
 {¶ 48} "(e) Whether the offender or delinquent child used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
 {¶ 49} "(f) If the offender or delinquent child previously has been convicted of or pleaded guilty to, or been adjudicated a delinquent child for committing an act that if committed by an adult would be, a criminal offense, whether the offender or delinquent child completed any sentence or dispositional order imposed for the prior offense or act and, if the prior offense or act was a sex offense or a sexually oriented offense, whether the offender or delinquent child participated in available programs for sexual offenders;
 {¶ 50} "(g) Any mental illness or mental disability of the offender or delinquent child;
 {¶ 51} "(h) The nature of the offender's or delinquent child's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
 {¶ 52} "(i) Whether the offender or delinquent child, during the commission of the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made, displayed cruelty or made one or more threats of cruelty;
 {¶ 53} "(j) Any additional behavioral characteristics that contribute to the offender's or delinquent child's conduct."
 {¶ 54} The trial court heard evidence that Appellant had participated in, and was convicted of, a gang rape of a fifteen girl. The court also heard evidence that Appellant had been previously convicted of gross sexual imposition of a thirteen year old girl. (Sent. T. at 7). Appellant had been placed in sex offender programs three times and had been terminated for violating his contract and for poor attendance. Appellant had been previously incarcerated. (Sent. T. at 14). Appellant had also had three recent probation violation hearings for a criminal offense involving a firearm. (Sent. T. at 11).
 {¶ 55} Accordingly, based on the foregoing, we find that the trial court considered the elements set forth in R.C. 2950.09(B)(3) and that there was competent, credible evidence to support the sexual predator findings made by the trial court at the sentencing hearing. We further find that the evidence presented to the trial court at the hearing supports the finding that appellant is a sexual predator and is likely to engage in the future in one or more sexually oriented offenses.
 {¶ 56} Appellant's third assignment of error is overruled.
 {¶ 57} Appellant's convictions and sexual predator classification entered in the Stark County Court of Common Pleas is affirmed.
Boggins, P.J. Gwin, J. and Edwards, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, appellant's conviction and sentence in the Stark County Court of Common Pleas is affirmed. Costs assessed to appellant.